**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:26-cv-81436

LISA ROTH, Individually and on behalf of the ADT Health and Welfare Benefits Plan, and on behalf of all the similarly situated participants and beneficiaries of the plan,

Plaintiff,

v.

ADT LLC,

Defendant.

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

1. Plaintiff Lisa Roth ("Plaintiff"), individually, and on behalf of all other similarly situated participants, their beneficiaries and estates, and on behalf of the ADT Health and Welfare Benefits Plan ("the Plan"), brings this action under 29 U.S.C. §§ 1132(a)(2) and (3) against Defendant ADT LLC ("ADT" or "Defendant"). Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

2. ADT violates principles of fairness and the law by imposing discriminatory health-insurance surcharges on employees who use tobacco without providing a reasonable means to avoid them. This lawsuit challenges Defendant's unlawful practice of discriminating against certain employees based on their health conditions by requiring payment of a "tobacco surcharge" which results in higher prices for health insurance for employees suffering nicotine addictions in

plans offered by ADT in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").

3. ERISA permits health-contingent wellness programs that promote health if, and only if, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible reasonable alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard—along with a statement that the recommendations of a participant's personal physician will be accommodated—in "all plan materials" describing the surcharge; (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard; and (iv) providing participants with the opportunity to qualify for the reward at least once per year. See 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j); 29 C.F.R. § 2590.702(f). Defendant does not comply with these requirements.

4. In recent years, many U.S. employers have chosen to impose higher health plan premiums on employees who smoke or use other tobacco products, treating tobacco use as a justification for charging substantially more for the same coverage. These "tobacco surcharges"—sometimes rebranded as discounts or credits—can add hundreds or thousands of dollars per year to the cost of coverage based solely on an employee's personal health status. Under ERISA, however, such increased premium differentials based on health factors, such as tobacco or nicotine addiction, constitute unlawful discrimination and are permitted only as part of a compliant "wellness program," subject to strict regulatory criteria.

5. ERISA's anti-discrimination provisions prohibit any group health plan from charging an extra premium or fee based on any health status-related factor, including tobacco use, unless that fee is part of a bona fide "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. §

300gg-4(b)(1). The statute provides the Departments of Labor, Health and Human Services, and Treasury (the "Departments") with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182. Accordingly, the Departments have issued clear regulatory criteria that "**must be satisfied**" to qualify for the statutory exception or safe-harbor, which a plan fiduciary may invoke only by affirmatively demonstrating full compliance with all these strict requirements in response to claims that their program is discriminatory. Courts must defer to an agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

6. While tobacco surcharges are cloaked in rhetoric about improving employee health and well-being, the reality of these purported "wellness programs" demonstrates the need for stringent regulatory safeguards. Despite implementation by numerous employer-sponsored health insurance and benefits plans across the country, there is little evidence that tobacco surcharges are effective in encouraging smokers to quit or that wellness programs effectively reduce healthcare costs through health improvement. Research suggests that even low surcharges can cause tobacco users to opt out of coverage.[1] Instead, the increased fees and premiums charged by employers often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory

[1] Am. Lung Ass'n, Tobacco Surcharges (May 2025), https://www.lung.org/getmedia/c63d5d26-fc33-47a7-93b8-fb39c915e899/Tobacco-Surcharges.pdf (last visited Oct. 19, 2026).

[2] Jill R. Horwitz, Brenna D. Kelly & John E. DiNardo, Wellness Incentives in the Workplace: Cost Savings Through Cost Shifting to Unhealthy Workers, 32 Health Affs. 468, 474 (2013) ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost

safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs, shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal of these safeguards is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

7. Upon allegations from a participant that a surcharge-based wellness program violates ERISA's anti-discrimination provisions, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 703 (2025) (a defendant claiming an exemption from ERISA's prohibitions bears the burden of proving the exemption's applicability).

8. To qualify a tobacco surcharge as a compliant wellness program, among other requirements, a company must offer a "reasonable alternative standard," usually in the form of a tobacco cessation program, the completion of which allows participants to obtain the "full reward" by avoiding the entire surcharge. In other words, a reasonable alternative standard will refund a tobacco user all tobacco surcharges paid during the operative plan year or allow them to avoid paying it in the first place.

9. ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be

---

shifting"); *see also* E. Dorilas, S.C. Hill & M.F. Pesko, Tobacco Surcharges Associated with Reduced ACA Marketplace Enrollment, 41 Health Affs. 398 (2022), https://www.healthaffairs.org/doi/10.1377/hlthaff.2021.01313 (last visited Oct. 21, 2026) (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (the "Final Regulations") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be***

forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.* at 33160 (emphasis added).

10. Under the rules of the program that is the subject of this lawsuit, the full reward is unattainable to any individual who discloses tobacco use. Consequently, Defendant's tobacco surcharge program follows a non-compliant penalty structure rather than a lawful wellness incentive and violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products. Defendant's tobacco surcharge therefore cannot meet the legal requirements for a bona fide wellness program.

11. Additionally, notice of the availability and features of the reasonable alternative standard *must* be disclosed "***in all plan materials*** describing the terms of" a health-contingent wellness program, such as a tobacco surcharge. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E). An employer implementing a tobacco surcharge program in its benefits plan, as ADT has, must provide a compliant notice that the reasonable alternative standard exists for nicotine or tobacco users in ***every*** Plan communication discussing the premium differential, including notice that the requirements of the alternative standard itself

---

***provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

may be waived based on the recommendations of a participant's physician. Because ADT's tobacco surcharge program is patently noncompliant, that notice is impossible.

12. While a wellness program which satisfies the essential regulatory requirements of the Final Regulations may qualify for a statutory safe-harbor, these criteria "***must be satisfied***" to be lawful under ERISA. Final Regulations, 33160. The core deficiency of ADT's wellness program is that it does not offer a reasonable alternative standard that provides the "full reward" to all participants who satisfy that alternative standard, as explicitly required by Section 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4). ADT's Plan instead levies an egregiously high monthly fee of $100 ($1,200 annually) on any employee, and any enrolled member of the employee's family, who discloses their status as a tobacco user. ADT collects these ill-gotten funds as windfall income, and upon information and belief retains them in its own accounts, earning interest, rather than offsetting premiums, expenses, or claim costs for the benefit of the Plan or its participants.

13. By failing to provide an alternative standard with a mechanism for retroactive reimbursement to those who satisfy that standard, ADT operates an unlawful surcharge program that denies Plan participants who use tobacco the opportunity to avoid the full penalty as required by law. This is not a minor technical failure—it is a fundamental violation of the regulation's core purpose: ensuring that all participants have an opportunity to avoid the tobacco surcharge and receive the same financial benefit as those who meet the initial standard (i.e., non-smokers). Without retroactive reimbursement, this is impossible.

14. Because the surcharge program is, at its core, noncompliant with the regulations, Defendant relatedly has failed to include proper notice in all Plan materials discussing the tobacco surcharges of the actions participants might take to avoid the surcharge as expressly required by

45 C.F.R. § 146.121(f)(4)(v). ADT provides only a description of a non-compliant alternative standard with no retroactive reimbursement option, and provides no option to accommodate physician instructions. ADT's notice therefore cannot comply with the requirements of the regulation. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure"). Each of ADT's standalone violations of the Final Regulations disqualifies ADT from asserting the affirmative defense in response to allegations that its tobacco surcharge program is discriminatory and violates ERISA. Upon information and belief, due to the facially non-compliant nature of its prospective-only relief, the required notice is absent from all Plan materials. Again, because Defendant's wellness program does not satisfy the necessary regulatory criteria for a "program[] of health promotion" under 29 U.S.C. § 1182(b)(2)(B), Defendant's wellness program fails to qualify under the statutory safe harbor, meaning the tobacco surcharge it imposes on participants is unlawful and discriminatory in violation of ERISA.

15. This Complaint alleges that ADT imposes a discriminatory and unlawful tobacco surcharge. ADT bears the burden of proving that its tobacco surcharge program fully complies with *every regulatory requirement* under ERISA and its implementing regulations, including providing a clearly defined, reasonable alternative standard that allows all participants to avoid the surcharge and receive a full refund if they satisfy the alternative. ADT cannot meet this burden because its Plan explicitly does not provide a full reward. No retroactive reimbursement of the tobacco surcharge is provided in connection with its tobacco cessation program. Without a compliant reasonable alternative standard, ADT's surcharge is not a lawful wellness incentive, but an impermissible penalty imposed on employees based on a health factor.

16. The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, and are not simply a pretextual subterfuge to discriminate based on a health factor and shift costs to higher risk individuals. 29 C.F.R. § 2590.702(f)(4)(iii). ADT's Plan is not a "program of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status. 29 C.F.R. § 2590.702(f).

17. By implementing the Plan, which fails to establish a compliant reasonable alternative standard and engages in punitive fines against employees who disclose that they are tobacco users, Defendant unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

18. Plaintiff Lisa Roth is formerly one such employee of Defendant and during her tenure at ADT she was required to pay the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

19. While acting in the capacity of a fiduciary as Plan Sponsor and administrator, Defendant collects and retains the unlawful tobacco surcharge from its employees. Upon information and belief, rather than placing these funds in a trust account for the benefit of the Plan and its participants, Defendant retained these proceeds for itself. Because available plan materials provide no indication that ADT contributed these proceeds to the Plan in a manner that would offset costs to the Plan itself or fund the Plan's claims and administrative expenses, upon information and belief Defendant has always retained all proceeds of the Plan's tobacco surcharge as a part of its own assets, although discovery is needed to confirm. Thus, the Plan has been harmed by Defendant's retention of the funds which are commingled with Defendant's own accounts.

20. Defendant's retention of the tobacco surcharge funds increased Defendant's own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit.

21. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and also Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. As the Plan's sponsor and administrator, Defendant is a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) with a legal obligation to act in the best interests of Plan participants, as well as the Plan itself, and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

22. At relevant times during the six years prior to the filing of this complaint, Plaintiff was employed by ADT and obtained health insurance through the employer-sponsored Health Plan offered by ADT.

23. While employed by ADT, Plaintiff was required to certify her status as a tobacco user in order to enroll in ADT's employer-sponsored health insurance. At relevant times during the six years prior to the filing of this complaint, Plaintiff was required to pay and did pay a monthly surcharge of $100 in addition to Defendant's health insurance plan premiums to receive health insurance benefits through Blue Cross Blue Shield of Alabama.

24. Plaintiff is a resident of Aurora, Colorado.

25. By virtue of participation in the health and welfare plan offered by ADT while employed by Defendant, and payment of the wrongfully discriminatory surcharge, Plaintiff is eligible to receive additional benefits under the Plan as a result of Defendant's breaches of fiduciary duty and violation of provisions of ERISA.

26. Thus, Plaintiff is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

27. Defendant ADT is one of the most widely recognized brands in the field of residential and small-business security monitoring. ADT is a publicly traded company with over $5.12 billion in annual revenue in 2025 and employs more than 12,000 people in the United States, with offices and business locations in multiple states.

28. ADT LLC is a company with its principal offices located at 1501 Yamato Road, Boca Raton, Florida.

29. Defendant ADT LLC is the sponsor of the ADT Health and Welfare Benefits Plan and the Plan Administrator under 29 U.S.C. § 1002(16). For the Plan Year ending December 31, 2024, the Plan had over 12,000 participants. ADT's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(1) and 29 U.S.C. § 1003(a).

30. At relevant times during the Class Period, Plaintiff paid premiums inflated by Defendant's wrongfully discriminatory policies, including $100 automatically deducted from her paychecks each month, in addition to her monthly premium amounts.

**<u>JURISDICTION AND VENUE</u>**

31. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and

belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

32. This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in Florida.

33. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District (in Boca Raton, Florida) and a substantial portion of the statutory breach took place in this District. Additionally, Defendant conducts business and can be found in this District, and the Plan is administered in this District.

## FACTUAL BACKGROUND

### I. ERISA'S ANTI-DISCRIMINATION FRAMEWORK

34. ERISA prohibits any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health status-related factor," including tobacco use.

35. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1)(A), 29 U.S.C. § 1182(b)(1)(A); 42 U.S.C. § 300gg-4(b)(1).

36. Under ERISA § 505, 29 U.S.C. § 1135, Congress expressly granted the Departments of Labor, Health and Human Services, and Treasury (the "Departments") authority to issue regulations operationalizing the prohibition against discrimination against participants and

beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182, and the Public Health Service Act ("PHSA") § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. 29 U.S.C. § 1135. Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

37. The statutory language of ERISA permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

38. In 2013, the Departments approved Final Regulations (effective Jan. 1, 2014) providing criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA and the PHSA.[4] These regulations specifically include requirements for outcome-based wellness programs[5] like tobacco cessation programs.

39. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

---

[4] *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, Final Regulations, 33163 (June 3, 2013).

[5] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

a. Frequency of opportunity to qualify: participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

b. Size of reward: the reward (or penalty) cannot exceed 50% of the total cost of employee-only coverage to the extent the program is designed to prevent or reduce tobacco use. § 2590.702(f)(4)(ii), (f)(5).

c. Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

d. Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

e. Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated if that physician deems a plan standard not medically appropriate for that individual. *See* § 2590.702(f)(4)(v).

40. The regulations also provide in detail that, for outcome-based programs, the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet

the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Regulations describe this requirement and provide a clear example:

> "the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)."
>
> *Id*. at 33163.

41. As defined by the PHSA, a reward expressly "may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), ***the absence of a surcharge,*** or the value of a benefit that would otherwise not be provided under the plan." 42 U.S.C. § 300gg-4(j)(3)(A) (emphasis added).

42. The regulations provide that outcome-based wellness programs, such as those involving tobacco cessation programs, are compliant under ERISA ***only if all regulatory requirements are satisfied***. *See* 29 C.F.R. § 2590.702(f)(4).

43. The Departments explained, "these rules set forth criteria for ***an affirmative defense*** that can be used by plans and issuers ***in response to a claim that the plan or issuer discriminated***" against participants. Final Regulations, 33160 (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies all the necessary regulatory criteria. *See Cunningham*, 604 U.S. at 703.

44. The criteria established by the Final Regulations are not optional. The Plan may only impose health-based premium differentials if it satisfies the requirements therein. *See* Final

Regulations, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . ***that must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination*** . . . .") (emphasis added).

45. The regulations also explicitly state that a plan or issuer "must disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E). Thus, plans that charge their participants more and fail to provide the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

46. The Departments explained that documents that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use . . . is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice regarding a reasonable alternative standard, including omitting a statement that a participant's physician's recommendations will be accommodated, and any possibility that the full reward can be earned retroactively, violate this rule.

## II. ADT'S PLAN UNDER ERISA

46. The Plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), established by Defendant as an employer to provide participants or their beneficiaries through the purchase of insurance with medical, surgical or hospital care or benefits in the event of sickness or other medical event. The Plan is an employee benefit plan subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a) and was first effective in 2012.

47. Eligible current and former employees of ADT and their family members can receive health insurance coverage by participating in a medical plan sponsored and administered by ADT. These medical benefits are offered under the ADT Health and Welfare Benefits Plan.

48. As sponsor of the Plan, Defendant controls and manages the operation and administration of the Plan in an ongoing basis, including the creation and distribution of materials describing the Plan and the tobacco surcharge. Defendant monitors the collection of surcharge amounts. Defendant has a fiduciary responsibility to participants and beneficiaries in the Plan.

49. By the end of 2025 the Plan covered more than 12,000 participants and their families, and in years previous to that covered a similar number of people. Upon information and belief, due to employee turnover, the total number of unique individuals covered by the Plan during the relevant period is far greater than any single yearly total.

50. Upon information and belief, the number of tobacco users who have enrolled in the Plan reflects that found in the general population of working-age adults in the United States and would represent at least 10 percent of Plan participants, resulting in payment of the improper ADT tobacco surcharge by thousands of individuals in each year from 2020 to present.

## III. ADT'S SURCHARGE PROGRAM VIOLATES ERISA'S ANTI-DISCRIMINATION RULES

51. The Plan imposes a tobacco surcharge on every participant who elects to be a tobacco user and enrolls in Plan medical coverage. The Employee Benefits Guide, which is distributed to participants in connection with open enrollment, describes the surcharge: "All employees . . . are required to certify their tobacco/nicotine user status and to pay the tobacco/nicotine surcharge, if applicable." It goes on to briefly define tobacco user status: "[y]ou are considered a user if you have consumed tobacco and/or nicotine products (other than those provided for tobacco cessation or under medical care)"; and then provides the amount of the surcharge: "if you use tobacco/nicotine you will pay an additional $100 per month for medical coverage."

> ## Tobacco/nicotine surcharge
>
> All employees who enroll in a Blue Cross Blue Shield plan are required to certify their tobacco and/or nicotine status, and to pay the tobacco/ nicotine surcharge, if applicable.
>
> You are considered a user if you have consumed tobacco and/or nicotine products (other than those provided for tobacco cessation or under medical care). If you use tobacco/nicotine products, you will pay an additional $100 per month for medical coverage.
>
> You can avoid this surcharge by completing a tobacco cessation program and reporting the completion to EmployeeAccess. The surcharge will be removed on a go-forward basis.
>
> See page 30 for information on the tobacco/ nicotine cessation program option available through ADT's Wellness Program.
>
> **Note:** If you enroll in a Kaiser Permanente, UHA (Hawaii), or Humana (Puerto Rico) Medical Plan, the tobacco/nicotine surcharge does not apply.

52. Defendant's tobacco surcharge violates ERISA because it unlawfully discriminates on the basis of a health status-related factor, fails to provide a compliant requisite reasonable alternative standard, and fails to comply with statutory and regulatory notice requirements.

53. ADT's plan materials, issued widely to inform employees of their available health benefits, fail to provide notice of a compliant and available reasonable alternative standard despite making specific reference to a premium differential based on tobacco use, and are therefore noncompliant with ERISA's requirements.

54. The materials provide that "you can avoid this surcharge by completing a tobacco cessation program and reporting the completion to EmployeeAccess. The surcharge will be removed on a go-forward basis." Thus, ADT's Plan materials make clear that removal of the

surcharge is not retroactive and that plan members will not be reimbursed for amounts paid before they complete the cessation program.

55. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

56. Defendant's tobacco surcharge violates this provision. Any plan participant, including Plaintiff and all others similarly situated, who elected the status of "tobacco/nicotine user" during the Plan's enrollment period, was *required* to pay an additional premium or contribution every month based on a "health status-related factor"—their use of tobacco products. Had Plaintiff refused to pay the required tobacco surcharge, she would have risked her initial or continued enrollment in the Plan. Payment of the tobacco surcharge was therefore a condition of enrollment and continued enrollment in the Plan.

## IV. ADT'S TOBACCO SURCHARGE LACKS A COMPLIANT REASONABLE ALTERNATIVE STANDARD

57. ADT's Tobacco Surcharge program fails to meet the regulatory criteria and, therefore, Defendant cannot qualify for the statutory exception allowing for premium differentials. Defendant's noncompliant wellness program fundamentally fails to comply with ERISA's regulatory requirements because it fails to provide the "full reward" due any member who completes a tobacco cessation program by reimbursing tobacco surcharge amounts paid from the beginning of the plan year, and fails to provide a statement that the recommendations of an individual's personal physician will be accommodated. Because these elements are not part of the

ADT Surcharge Program, the program necessarily fails to provide notice of the same in all the Plan materials discussing the tobacco surcharge.

58. The ADT Tobacco Surcharge Program is a facially non-compliant tobacco surcharge since even if the participant completes the Tobacco/Nicotine Cessation Program, retroactive reimbursement of the surcharge is unavailable.

59. ADT's cessation program is therefore non-compliant for an additional reason: no participant, having disclosed tobacco use, can avoid the surcharge for the first month of the Plan year, whether the Tobacco/Nicotine Cessation Program is completed or not:

> **Tobacco/Nicotine Cessation Program**
>
> The tobacco cessation program, provided through StayWell, is available to all benefits-eligible employees and their family members. Through the program, you can participate in online training, work one-on-one with a coach by phone, and access personalized tools and resources, including nicotine replacement aids, if appropriate.

The "Tobacco/Nicotine Cessation Program" offered in ADT's Benefits Guide, offered as of 2021 by StayWell, grants no opportunity to complete the cessation program pre-emptively, to prevent incurring the surcharge prior to enrolling in the ADT Plan.

60. Nor does the Tobacco Surcharge Program, as disclosed to ADT's Plan participants prior to enrollment, provide any acknowledgement that a participant can waive an otherwise applicable standard, here the StayWell Tobacco/Nicotine Cessation Program, if an individual's physician states that the program is medically inadvisable.

61. ADT's Benefits Guide is a plan material describing the terms of the wellness program. It is an example of participant-facing materials, promulgated by Defendant, which describes the tobacco surcharge and the higher premium contributions imposed on tobacco users. It describes the surcharge, the trigger, the amount, and the duration.

62. The Regulations provide a stark comparator to the language of the Benefits Guide, in Example 6 under 29 C.F.R. § 2590.702(f)(4)(vi), which outlines generally the requirements on a group health plan that offers a hypothetical, compliant tobacco surcharge program:

> In conjunction with an annual open enrollment period, a group health plan provides a premium differential based on tobacco use, determined using a health risk assessment. The following statement is included in all plan materials describing the tobacco premium differential: "Stop smoking today! We can help! If you are a smoker, we offer a smoking cessation program. If you complete the program, you can avoid this surcharge." The plan accommodates participants who smoke by facilitating their enrollment in a smoking cessation program that requires participation at a time and place that are not unreasonably burdensome or impractical for participants, and that is otherwise reasonably designed based on all the relevant facts and circumstances, and discloses contact information and the individual's option to involve his or her personal physician. The plan pays for the cost of participation in the smoking cessation program. Any participant can avoid the surcharge for the plan year by participating in the program, regardless of whether the participant stops smoking, but the plan can require a participant who wants to avoid the surcharge in a subsequent year to complete the smoking cessation program again.

63. The regulations highlight the ways that the tobacco surcharge described in Example 6 satisfies the requirements of ERISA on an outcome-based wellness program, like that implemented by ADT, in which the initial standard for obtaining a reward is dependent on the results of a health risk assessment (a measurement, test, or screening), in this instance, self-reporting of tobacco use.

64. The program in Example 6 is reasonably designed under 29 C.F.R. § 2590.702(f)(4)(iii) because the plan provides a reasonable alternative standard (as required under paragraph (f)(4)(iv)) to qualify for the reward to all tobacco users, in that case, a smoking cessation

program, which is paid for by the plan and in which participation is facilitated, at a time and place that are not unreasonably burdensome or impractical for participants. The participant can also earn the "full reward" by avoiding the surcharge for the plan year by participating in the program, regardless of whether the participant is actually able to quit.

65. The Example 6 plan also meets the strict notice requirements under ERISA regulations, because it provides ***in all materials describing the terms of the program***, the availability of the reasonable alternative standard including contact information and the individual's option to involve his or her personal physician.

66. Unlike Example 6 of the Regulations, ADT does not provide participants with a reasonable alternative standard to avoid the tobacco surcharge for the entire plan year. There is a smoking cessation program, but no physician alternative, waiver, or other alternative route for tobacco users to obtain the "full reward" (i.e., avoiding the surcharge for an entire plan year). While the ADT program potentially provides relief from the surcharge on a "go-forward" basis after completion of the cessation program, no member who reports tobacco usage can avoid payment of at least one monthly surcharge.

67. ADT's wellness program violates ERISA and its implementing regulations by failing to provide a "program[] of health promotion or disease prevention" that complies with the regulatory framework. To qualify for ERISA's safe harbor, a wellness program must offer a clearly defined, reasonable alternative standard and ensure that all participants who satisfy it receive the full reward. ADT's Plan fails to meet these requirements. It clearly does not offer the full reward due all plan participants and ***fails to provide proper notice of the alternative standard in all plan materials discussing the surcharge***.

68. There is no way for participants to have any portion of the surcharge reimbursed on a *retrospective* basis, despite regulatory requirements that the "full reward" must be provided to "all similarly situated individuals" who satisfy a reasonable alternative standard.

69. By failing to refund surcharge amounts paid after completion of the cessation program, the Plan fails to offer a per se reasonable alternative standard. By failing to clearly offer a reasonable alternative standard, ADT's surcharge program violates ERISA's regulatory framework. The Plan does not ensure that all similarly situated individuals who satisfy the alternative standard receive a full refund, and ***fails to provide clear notice of any alternative standard in all plan materials that reference the surcharge***. These deficiencies make Defendant's surcharge an impermissible cost-shifting scheme rather than a compliant health promotion program.

70. Further, ADT's materials addressing the tobacco surcharge fail to include a statement that a participant's physician's recommendations will be accommodated, as required under ERISA regulations. This omission not only fails to meet the regulatory requirements under ERISA but also undermines the purpose of wellness programs, which is to promote health outcomes in an inclusive and equitable manner. By failing to include this critical information in its materials, Defendant prevented participants, particularly those who may have unique medical conditions or disabilities, from knowing that they have the option to work with their healthcare provider to identify and recommend a reasonable alternative standard tailored to their individual needs.

71. Under ERISA, a wellness program cannot claim safe harbor protection unless every criterion of the regulatory framework is satisfied. *See* 29 C.F.R. § 2590.702(f)(4). Because the Plan fails to meet nearly all of the regulatory criteria, ADT cannot qualify for the statutory

exception allowing for premium differentials. Further, because in the first instance the Plan fails to offer a compliant reasonable alternative standard, ADT likewise cannot provide notice of a ***compliant*** alternative ***in all plan materials that reference the surcharge***, and fails to provide participants with notice under 29 C.F.R. § 2590.702(f)(4)(v).

72. In promulgating the implementing regulations, "the Departments intend that the requirement to provide a reasonable alternative standard will eliminate instances where wellness programs serve only to shift costs to higher risk individuals and increase instances where programs succeed at helping high risk individuals improve their health." Final Regulations, 33172.

73. ADT's surcharge, however, is little more than an impermissible cost-shifting scheme, providing ill-gotten gains in the form of wrongfully collected monthly fees, which rather than enhance the health and well-being of participants in the Plan, provides an unlawful revenue stream for ADT at the expense of its employees.

74. Defendant controls the administration of the nicotine premium wellness program, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks, evaluating and deciding whether participants satisfy the alternative standard, and when those participants will be reimbursed, if at all, and determining which information is transmitted to participants and when. Upon information and belief, the amounts Defendant deducted from participants' paychecks are not placed in a trust account for the Plan but are instead deposited into general accounts. By retaining these surcharges rather than reimbursing participants who satisfy the alternative standard later in the year or contributing the funds to the Plan, ADT unlawfully profits from its own regulatory violations. Instead of complying with its legal obligations to provide a compliant wellness program, Defendant withholds surcharges that should be returned to participants and, in doing so, ADT earns interest on improperly retained

funds while simultaneously reducing its own financial contributions to the Plan. This practice constitutes self-dealing and a breach of fiduciary duty under ERISA, which mandates that Plan assets be managed exclusively for the benefit of participants and beneficiaries—not to enhance the company's bottom line.

## V. ADMINISTRATIVE EXHAUSTION

75. This action asserts statutory claims, including claims for fiduciary breach under ERISA rather than a claim for benefits. Administrative exhaustion is therefore not required in the Eleventh Circuit, which recently definitively rejected that condition, noting that "[w]e do not take our decision to overrule *Mason* lightly. But our holding requiring administrative exhaustion in *Mason* was an atextual product of judicial creation based solely on policy reasons." *Bolton v. Inland Fresh Seafood Corp. of Am., Inc.,* No. 24-10084, 2026 WL 3056461, at *2 (11th Cir. Oct. 13, 2026) (en banc).

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of Plaintiff and the Class, which is defined as participants in and beneficiaries of the Plan who paid the improper surcharge in the six years prior to the filing of this complaint.

77. The Class excludes Defendant; any person who was or is an officer, director, employee, or a shareholder of 5% or more of the equity of Defendant or is or was a partner, officer, director, or controlling person of Defendant; the spouse or children of any individual who is an officer, director or owner of 5% or more of the equity of Defendant; Plaintiff's counsel; judges of the Court in which this case is pending and their current spouse and children; and the legal representatives, heirs, successors and assigns of any such excluded person.

78. The Class Period includes the six years prior to the date of the filing of this Complaint through the date of judgment.

79. The members of the Class are so numerous, consisting of at least hundreds, but likely thousands of participants in the Plan, and their dependent beneficiaries, and upon information and belief, the members of the Class are sufficiently dispersed geographically such that joinder of all members is impracticable. The issues of liability are common to all members of the Class and are suitable to common resolution.

80. Plaintiff's claims are typical of the claims of other members of the Class because their claims arise from the same events, practices and/or courses of conduct described above.

81. Plaintiff will fairly and adequately represent and protect the interests of the Class.

82. Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

83. Defendant has no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

84. Plaintiff is represented by counsel experienced in prosecuting ERISA class actions and with particular experience and expertise in litigation involving ERISA breaches of fiduciary duty.

85. The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action challenges whether Defendant acted consistently with its obligations under ERISA as to the Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of

inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

86. The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendant fulfilled its fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

87. The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendant has acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. This action challenges whether Defendant breached its fiduciary duties, which would be violations of ERISA as to the Plan as a whole and as to the Class as a whole. A portion of the relief sought in this case primarily consists of policy changes that would affect both the class as a whole and every plan participant, since removal of the tobacco use disclosure requirement would affect all plan participants. As ERISA is based on trust law, the monetary relief sought consists of equitable monetary relief that would either flow directly from the declaratory or injunctive relief or flow as a necessary consequence of that relief.

88. The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendant breached its fiduciary duties to the Plan. As the members of the Class were participants in that Plan, they paid the unlawfully implemented and discriminatory tobacco surcharge as a result of Defendant's breach of that duty. Common questions related to liability will necessarily predominate over any individual questions precisely because

Defendant's duties and obligations were uniform to all participants and therefore all members of the Class. As relief and any recovery will be on behalf of the Plan, common questions as to remedies and damages will likewise predominate over any individual issues.

89. A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendant's duties with regard to the Plan.

90. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
## UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
## (Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702)

91. Plaintiff restates and realleges the allegations in paragraphs 1-90 as if fully set forth herein.

92. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge.

93. Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of $100 monthly on participants who use tobacco, without complying with the regulatory requirements, Defendant is

violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

94. ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). A tobacco surcharge is therefore unlawful unless the plan satisfies each condition of the narrow wellness-program exception. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B). To qualify for the wellness-program exception, the Plan must make available a reasonable alternative standard, make the full reward available to participants who satisfy it, and provide participants the opportunity to qualify for the reward at least once per year. 42 U.S.C. § 300gg-4(j)(3)(B)–(E); 29 C.F.R. § 2590.702(f)(4)(i)–(v).

95. Defendant's imposition of the tobacco surcharge violates ERISA § 702 and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendant's wellness program is non-compliant because it does not comply with most of the regulatory framework.

96. Defendant administers a tobacco surcharge that fails to satisfy the regulatory requirements to qualify for the statutory wellness program exception, 29 U.S.C. § 1182(b)(2)(B), in the following ways:

a. failing to provide an alternative standard that provides those who satisfy that standard with the "full reward" by reimbursing tobacco surcharge amounts paid prior to completing the offered tobacco cessation program;

b. failing to offer an opportunity to qualify for a compliant alternative standard at least once a year by explicitly providing reimbursement of the tobacco surcharge for amounts paid prior to completing the offered tobacco cessation program;

c. failing to offer an opportunity to qualify for a compliant alternative standard at least once a year by not providing the opportunity to avoid the tobacco surcharge prior to the plan year;

d. failing to provide an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v);

e. failing to provide proper notice of a compliant alternative standard, including failure to provide notice in all plan materials under 42 U.S.C. § 300gg-4(j)(3)(E).

97. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. Because Defendant's surcharge program does not satisfy several of the five criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and class members are entitled to relief under ERISA § 502(a)(3).

98. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

**COUNT II**
**UNLAWFUL SURCHARGE**
**FAILURE TO PROVIDE REQUIRED NOTICE**
**(Violation of ERISA § 702, 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)**

99. Plaintiff restates and realleges the allegations in paragraphs 1-90 as if fully set forth herein.

100. Defendant's tobacco surcharge is not and was not a permissible wellness program, because ADT did not give statutorily required notice of a compliant reasonable alternative standard, in that the Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year, upon satisfying an alternative standard.

101. Defendant failed to provide an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

102. Defendant failed to provide proper notice of a compliant alternative standard, including failure to provide notice in all plan materials under 42 U.S.C. § 300gg-4(j)(3)(E).

103. Defendant failed to provide notice in all Plan materials of an alternative standard that provides those who satisfy that standard with the "full reward" by reimbursing tobacco surcharge amounts paid prior to completing the offered tobacco cessation program.

104. Defendant cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

105. ADT's tobacco surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor and is assessing premiums or

contributions in violation of 29 U.S.C. § 1182(b) which Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3) and seek appropriate equitable relief to enjoin Defendant's unlawful practices, redress Defendant's violations, and enforce ERISA. Plaintiff and class members are therefore entitled to appropriate equitable relief, including restitution, disgorgement, surcharge, an accounting, declaratory relief, and such other relief as the Court deems just and proper.

106. Plaintiff and class members were required to pay an illegal fee, and ADT collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106 and 1109; under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3))**

107. Plaintiff restates and realleges the allegations in paragraphs 1-90 as if fully set forth herein.

108. At all times relevant to this lawsuit, ADT was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the medical benefits plans and disposition of their assets by collecting and holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

109. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1), 1106(b)(1). These duties of

loyalty and prudence are the "highest known to the law" and require fiduciaries to "act for the exclusive benefit of plan beneficiaries." *Howard v. Shay,* 100 F.3d 1484, 1488 (9th Cir. 1996).

110. Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), and in that capacity it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and its surcharge programs, including the decision not to offer a compliant reasonable alternative standard.

111. Each year, Defendant exercised discretionary authority with respect to the administration and implementation of the unlawful surcharge program by administering a surcharge program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, actively dictated the eligibility criteria and penalties for noncompliance, and failed to provide participants with the necessary notices related to the reasonable alternative standard.

112. ADT controlled and disseminated to all employees the contents of the Benefits Guide discussing the tobacco surcharge but failed to notify participants of a compliant reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied an alternative standard in violation of the regulations. Further, ADT failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations. Year after year, Defendant failed to properly institute safeguards against administering a program that violated the statute and implementing regulations. These actions reflect ADT's active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

113. ADT breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. ADT acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

114. Defendant breached its fiduciary duties by:

a. failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decisions;

b. administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D);

c. acting on behalf of a party whose interests were adverse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2); and

d. failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B).

115. These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with its fiduciary duties under ERISA, it would have offered a reasonable alternative standard at least once each plan year that allowed all similarly situated individuals to obtain the "full reward," and would have reviewed the terms of the Plan and the surcharge program, as well as the communications sent to participants regarding that surcharge program, to ensure they complied with ERISA and the implementing regulations.

116. ADT also breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

117. Upon information and belief, Defendant retained the amounts of the surcharges, thereby increasing its own monies. By mingling the additional money received from the surcharges with its own assets, Defendant dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). As a result of the imposition of the unlawful and discriminatory tobacco surcharge, Defendant enriched itself at the expense of the Plan, resulting in it receiving a windfall. Therefore, Defendant's collection of the tobacco surcharge diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

118. Despite being unlawful for the reasons already discussed above, ADT was duty-bound to deposit the tobacco surcharge amounts into the Plan once they were collected from Plaintiff and other similarly situated participants. Instead, on information and belief, ADT took those amounts, did not deposit them into the Plan, used them to offset its own contribution amounts, and otherwise used them to profit at the expense of the Plan.

119. As a result of the imposition of the tobacco surcharge, ADT enriched itself at the expense of the Plan and its participants, thereby resulting in a windfall to ADT. In so doing ADT breached its fiduciary duties under ERISA in that it:

a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA under 29 U.S.C. § 1104(a)(1)(D);

c. failed to ensure that the assets of the Plan did not inure to the benefit of the employer, in violation of ERISA under 29 U.S.C. § 1103(c);

d. caused the Plan to engage in transactions that ADT knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest—namely itself—of assets of the health plan, in violation of ERISA under 29 U.S.C. § 1106(a)(1)(D);

e. dealt with assets of the Plan in ADT's own interests in violation of ERISA under 29 U.S.C. § 1106(b)(1); and

f. acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. See 29 U.S.C. § 1106(b)(2).

120. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

121. Plaintiff and class members are authorized to recover individual equitable relief to remedy these breaches under 29 U.S.C. § 1132(a)(3).

122. Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits,

and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## PRAYER FOR RELIEF

Plaintiff, individually, in a representative capacity on behalf of the Plan, and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor and against ADT as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court order ADT to reimburse all persons who paid the tobacco surcharge within the class period;

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by ADT, or, alternatively, the profits earned by ADT in connection with its receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of ADT described herein violate ERISA and applicable law, as well as the terms of the plan;

E. That the Court enter a permanent injunction against ADT prohibiting it from collecting a tobacco surcharge unless and until the company revises the surcharge to comply with all ERISA statutory requirements;

F. That the Court order ADT to provide all accountings necessary to determine the amounts it must make good to the plan and to plan participants and beneficiaries;

G. That the Court surcharge against ADT all funds it collected in violation of ERISA and the terms of the plan;

H. That the Court find and adjudge that ADT is liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

I. That the Court impose a constructive trust on profits received by ADT as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J. That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K. That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L. That the Court order the payment of interest to the extent it is allowed by law; and

That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Mariya Weekes*
Mariya Weekes (Fla. Bar 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 206-9057
Email: mweekes@milberg.com

Alexandr Rudenco (*pro hac vice forthcoming*)
**MILBERG, PLLC**
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Tel: (865) 263-8384
arudenco@milberg.com

*Attorneys for Plaintiff Lisa Roth and the proposed class*